# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **REYNOLDS PACKAGING KAMA,** | : | No. 3:08cv1902 |
| **INC., f/k/a ALCOA KAMA, INC.,** | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| **INLINE PLASTICS CORPORATION,** | : | |
| Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court are the parties' objections to the report and recommendation of Magistrate Judge Martin C. Carlson, which proposes that the court grant Plaintiff Reynolds Packaging Kama, Inc. ("Reynolds") motion for summary judgment on its breach of contract claim and deny plaintiff's motion for summary judgment on Defendant Inline Plastics Corporation's ("Inline") counterclaim.

**Background**

This case concerns the financial dealings between Reynolds and Inline. Plaintiff Reynolds is a supplier of oriented polystyrene sheet ("OPS") and polystyrene terephthalate sheet ("PET") products. (Plaintiff's Statement of Facts in Support of Summary Judgment (Doc. 30) (hereinafter "Plaintiff's Statement") at ¶ 1). Defendant Inline uses and purchases OPS and PET products. (Id. at ¶ 2). The parties entered into an agreement on or about September 1, 2003 whereby Inline agreed to purchase from Reynolds these products. (Id. at ¶ 3). As a result of this agreement, Inline owed Reynolds $5,881,901.70 on June 30, 2006. (Id. at ¶ 4). Inline disputes

the exact amount of its obligation, as well as whether the obligation arose before or after the company fulfilled its obligations under the contract. (Defendant's Response to Plaintiff's Statement (Exh. 1 to Doc. 39) (hereinafter "Defendant's Response") at ¶ 4).

The parties entered into a new supply agreement on or about July 1, 2006. (Plaintiff's Statement at ¶ 5). That agreement had a stated term of two years. (Id. at ¶ 6). Inline remained indebted to Reynolds when this agreement expired on June 30, 2008. (Id. at ¶ 7). The parties disagree on the precise amount of this debt. Plaintiff contends that defendant owes approximately $2.8 million. (Id.). Inline insists that it made two quarterly payments while the case was pending, and that current indebtedness to Reynolds now totals a little more than $2.2 million. (Defendant's Response at ¶ 7).

Reynolds continued periodically to supply Inline with products from July 1, 2008 until October 2008. (Plaintiff's Statement at ¶ 8). The parties disagree about whether they had a contract to supply these goods after the 2006 contract expired at the end of June 2008. (Id. at ¶ 9; Defendant's Response at ¶ 9). Defendant claims that a "contractual relationship" arose after July 1, 2008 which obligated Reynolds to supply Inline with OPS and PET until January 2009. (Defendant's Response at ¶ 9).

Plaintiff filed a complaint in this court on October 15, 2008. (Doc. 1). The complaint raises a claim for breach of contract. The plaintiff alleges that defendant

2

breached the 2003 supply agreement by failing to pay amounts due under that agreement and failing to pay invoices issued by Reynolds under the 2006 contract. (Id. at ¶ 19). Count II of the complaint alleges unjust enrichment for Inline's taking delivery of Reynolds's product and not paying for it. Count III raises a claim for promissory estoppel, alleging that Inline should have known its promise to pay for product supplied by Reynolds induced Reynolds to supply that product and that Reynolds should therefore be paid for the product. The case was assigned to Magistrate Judge Thomas M. Blewitt for pre-trial proceedings. Inline filed a counterclaim along with its answer. The counterclaim alleged that Reynolds had breached a contract with defendant to supply Inline with plastic products after October 10, 2008.

After the parties completed discovery, plaintiff filed the instant motion for summary judgment, seeking judgment on both its claims and on the defendant's counterclaim. (Doc. 28). After the parties initially briefed the issues the case was transferred to Magistrate Judge Martin C. Carlson. (See Doc. 44). Magistrate Judge Carlson allowed additional briefing and then heard argument on the plaintiff's motion. On February 1, 2010, Magistrate Judge Carlson issued his report and recommendation. (Doc. 61). He concluded that the parol evidence rule barred consideration of any document or evidence outside of the 2006 contract between the parties, and found that summary judgment was appropriate for the plaintiff on its breach of contract claim. The magistrate judge found, however, that summary

3

judgment was inappropriate on the defendant's counterclaim. Evidence existed, the magistrate judge found, by which a jury could conclude that a contract existed between the parties after October 2008.

The parties filed objections to the report and recommendation, bringing the case to its present posture.

**Jurisdiction**

The plaintiff is a Delaware corporation with its principal place of business in Virginia. Defendant is a Connecticut corporation with its principal place of business in that state. The amount in controversy exceeds $75,000. The court therefore has jurisdiction pursuant to 42 U.S.C. § 1441. Because the court is sitting in diversity, the substantive law of Pennsylvania applies. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636 (b)(1)(C); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

When no objections to the report and recommendation are made, the court

4

must determine whether a review of the record evidences plain error or manifest injustice. See, e.g., Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983); FED. R. CIV. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation"); 28 U.S.C. § 636(b)(1).

The parties are before the court on motions for summary judgment. Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit

5

under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

**Discussion**

Both parties filed objections to the report and recommendation.  The court will address each party's objections in turn.

**A.  Inline's Objections**

Inline objects to the magistrate judge's recommendation that the court grant summary judgment to the plaintiff on the contract claim.  Plaintiff's breach of contract claim concerns defendant's admitted failure to pay debt accumulated under the 2003 contract.  The magistrate judge concluded that parol evidence rule barred consideration of extrinsic evidence that defendant argues would allow a factfinder to read the 2006 contract to include a provision that defendant could repay its debt through quarterly payments after the contract expired.   He concluded that the language at issue in paragraph 5 of the 2006 contract unambiguously required the defendant to add $.03 per pound for every pound it purchased from plaintiff as a

6

means of paying down the debt owed Reynolds. That language, the magistrate judge found, was not ambiguous and could not be read to allow Inline to continue to pay off its debt quarterly after the contract ended. As such, the magistrate judge refused to consider any extrinsic evidence of another agreement between the parties to retire defendant's debt. He concluded that plaintiff was entitled to judgment on its breach of contract claim.

Defendant argues that both parties knew that the debt arising from the 2003 contract would not be repaid under the terms of the 2006 agreement. Moreover, the parties had a twenty-year course of dealing whereby Reynolds would periodically allow Inline to accrue a large balance and then extend credit to defendant which could be repaid incrementally over time. These agreements, defendant contends, were mutually beneficial arrangements between a supplier and its largest customer, and were never intended to represent interest-bearing loans. Relying on this previous practice, defendant contends that it took the position that it could continue to repay its debt quarterly when the 2006 agreement expired. Plaintiff took the opposite position, insisting that payment was due in full. These conflicting and reasonable positions demonstrate the ambiguity in the contract and demonstrate the need for extrinsic evidence to determine how the remainder of the debt would be repaid.

Pennsylvania courts have concluded that "in the absence of fraud, accident, or mistake, parol evidence as to preliminary negotiations or oral agreement is not

7

admissible in evidence if it adds to, modifies, contradicts, or conflicts with the written agreement between the parties." Resolution Trust Corp. v. Urban Redevelopment Authority, 638 A.2d 972, 975 (Pa. 1994). "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone." Martin v. Monumental Life Ins. Co., 240 F.3d 223, 233 (3d Cir. 2001). At the same time, "[a]greements and negotiations prior to or contemporaneous with the adoption of a writing are admissible . . . to establish the meaning of ambiguous terms in the writing, whether or not the writing is integrated." Id.[1] Courts find that "[a] contract contains an ambiguity 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 430 (Pa. 2001) (quoting Hutchison v. Sunbeam Coal Co., 519 A.2d 385, 390 (Pa. 1986)). The question of ambiguity, however, "is not resolved in a vacuum. Instead, 'contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.'" Id. (quoting Madison Construction Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)).

Defendant does not point to any particular terms of the contract which are

---

[1]The contract here in question contains an integration clause. Paragraph 13(c) of the agreement states that "[t]his Agreement . . . (c) embodies the entire Agreement and understanding between the Parties, superseding all previous Agreements between the Parties relating to the subject matter thereof." (2006 Agreement at ¶ 13(c)). The defendant must therefore point to ambiguities within the terms of the contract that would allow the court to look outside the writing itself.

8

susceptible to alternative meanings, but instead uses extrinsic evidence to argue that terms not included in the contract must have been implied in it. The contract, in defendants argument, is ambiguous because it does not include terms for how any remaining debt from the 2003 contract would be repaid after completion of the 2006 contract. The contract does not purport to establish a repayment schedule, however. Instead, it lays out the terms for a purchase agreement between the parties, along with a way for defendant to repay some of its debt while continuing to make purchases.[2] No terms of the contract itself are ambiguous, and defendant points to no such terms. Defendant merely seeks to use extrinsic evidence to assert allegedly missing terms from the contract that would then make the contract ambiguous because it does not contain a repayment schedule for the remaining debt. For the court to read the contract that way would "add to" the terms of the contract that is not on its face ambiguous, thus violating the parol evidence rule.[3]

---

[2] The only provision of the contract that addresses the debt owed defendant by plaintiff is paragraph 5, which purports to establish payment terms. After setting up the terms for payments, including the date on which they are due and the place where they are to be sent, the contract provides that "To bring Buyer's account current, Buyer will pay Seller, quarterly, an additional $.03 per pound for all pounds of Product purchased during each quarter. Payment will be due five (5) working days from the end of the quarter. The payment will be applied to the outstanding receivables on Buyer's account." (Exh. 1 to plaintiff's Brief in Support of Summary Judgment Motion (Doc. ) (hereinafter "2006 Contract") at ¶ 5).

[3] Paragraph 13(c) of the contract also contains an integration clause, which reads: "This Agreement . . . (c) embodies the entire Agreement and understanding between the Parties, superseding all previous Agreements between the Parties relating to the subject matter hereof." (2006 Contract at ¶ 13(c)). As such, the parties specifically disclaimed any previous agreement to establish a continued payment schedule for defendant's debt when the 2006 contract expired.

See, e.g., Sullivan v. Sovereign Bancorp., Inc., 33 Fed. Appx. 640, 642 (3d Cir. 2002) (finding that "[o]ne clearly cannot rely upon inadmissible parol evidence to create an ambiguity that the oral statements then resolve. Such bootstrapping would be the exception that destroys the parol evidence rule.").

The court will overrule defendant's objections and adopt the report and recommendation on this point. Summary judgment will be granted the plaintiff on its breach of contract claim. A determination of plaintiff's damages on this claim, however, must await the resolution of defendant's breach-of-contract counterclaim. The amount of damages plaintiff is owed, if any, awaits a determination of what sort of an agreement the parties had surrounding payment of the debt defendant owed.

**B. Reynolds's Objections**

Reynolds offers only one objection to the report and recommendation. Reynolds insists that in reciting the facts related to the litigation, the Magistrate Judge erred in describing an order issued by then-presiding Magistrate Judge Thomas M. Blewitt on April 7, 2009. (See Doc. 23). According to Magistrate Judge Carlson, Judge Blewitt on that date denied a motion by the defendant to make quarterly payments of $260,000 into an escrow account. (Report and Recommendation (Doc. 61) at 5). Instead, Judge Blewitt ordered that defendant make a payment that was indisputably past-due directly to the plaintiff, but "remained silent" on the status of any future payments. (Id.). Plaintiff insists that Magistrate Judge Blewitt actually ordered that future quarterly payments be made directly to the

10

plaintiff.

The court will sustain this objection to the report and recommendation, such as it is. Magistrate Judge Blewitt's order does not appear to remain silent on whether future payments should be remitted to the plaintiff. (See Doc. 23). Magistrate Judge Blewitt directed defendant "to make all quarterly payments to Plaintiff that are due during the pendency of this action," in addition to directing defendant to submit payment for a past-due payment. (Id. at 6). As such, Magistrate Judge Carlson erred in finding that the April 7, 2009 order was silent on the issue of further payments.

Plaintiff does not object to the rest of the report and recommendation. One other portion of the report and recommendation proposes that the court deny Reynolds's motion for summary judgment with respect to defendant's counterclaim. Since no objections have been offered to this finding, the court need only determine that the decision does not evidence plain error or manifest injustice. After careful review, the court concludes that it does not. The court will therefore adopt the report and recommendation on this point.

**Conclusion**

For the reasons stated above, the court will overrule the defendant's objections and adopt the report and recommendation. The court will sustain plaintiff's objection to Magistrate Judge Carlson's finding that an earlier order by Magistrate Judge Blewitt was silent as to the subject of whether future payments on

defendant's debt should be remitted to plaintiff.  This finding will have no bearing on the outcome of the court's decision here, however, since the subject of the magistrate judge's opinion was plaintiff's motion for summary judgment. Reynolds's motion for summary judgment will be granted with respect to its contract claim and denied with respect to defendant's counterclaim.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REYNOLDS PACKAGING KAMA, INC., f/k/a ALCOA KAMA, INC., Plaintiff | No. 3:08cv1902 |
| | (Judge Munley) |
| v. | |
| INLINE PLASTICS CORPORATION, Defendant | |

## ORDER

**AND NOW**, to wit, this 17th day of March 2010, the defendant's objections (Doc. 62) to the report and recommendation of Magistrate Judge Martin C. Carlson (Doc. 61) are hereby **OVERRULED**. The plaintiff's objections (Doc. 64) to the report and recommendation of Magistrate Judge Martin C. Carlson are hereby **SUSTAINED**. The report and recommendation is **ADOPTED**. Plaintiff's motion for summary judgment (Doc. 28) is hereby **GRANTED** with respect to plaintiff's breach-of-contract claim and **DENIED** with respect to defendant's counterclaim.

                                                  **BY THE COURT:**

                                                  **s/ James M. Munley**
                                                  **JUDGE JAMES M. MUNLEY**
                                                  **United States District Court**