# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REYNOLDS PACKAGING KAMA, | : | No. 3:08cv1902 |
| INC., f/k/a ALCOA KAMA, INC., | : | |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| INLINE PLASTICS CORPORATION, | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is defendant's motion to permit defendant to place disputed payment in escrow.  Having been briefed the matter is ripe for disposition.

**Background**

This case concerns the financial dealings between Reynolds and Inline. Plaintiff Reynolds is a supplier of oriented polystyrene sheet ("OPS") and polystyrene terephthalate sheet ("PET") products.  (Plaintiff's Statement of Facts in Support of Summary Judgment (Doc. 30) (hereinafter "Plaintiff's Statement") at ¶ 1).  Defendant Inline uses and purchases OPS and PET products.  (Id. at ¶ 2).  The parties entered into an agreement on or about September 1, 2003 whereby Inline agreed to purchase from Reynolds these products.  (Id. at ¶ 3).  As a result of this agreement, Inline owed Reynolds $5,881,901.70 on June 30, 2006.  (Id. at ¶ 4).  Inline disputes the exact amount of its obligation, as well as whether the obligation arose before or after the company fulfilled its obligations under the contract.  (Defendant's Response to Plaintiff's Statement (Exh. 1 to Doc. 39) (hereinafter "Defendant's Response") at ¶

4).

The parties entered into a new supply agreement on or about July 1, 2006. (Plaintiff's Statement at ¶ 5).  That agreement had a stated term of two years.  (Id. at ¶ 6).  Inline remained indebted to Reynolds when this agreement expired on June 30, 2008.  (Id. at ¶ 7).  The parties disagree on the precise amount of this debt. Plaintiff contends that defendant owes approximately $2.8 million.  (Id.).  Inline insists that it made two quarterly payments while the case was pending, and that current indebtedness to Reynolds now totals a little more than $2.2 million. (Defendant's Response at ¶ 7).

Reynolds continued periodically to supply Inline with products from July 1, 2008 until October 2008.  (Plaintiff's Statement at ¶ 8).  The parties disagree about whether they had a contract to supply these goods after the 2006 contract expired at the end of June 2008.  (Id. at ¶ 9; Defendant's Response at ¶ 9). Defendant claims that a "contractual relationship" arose after July 1, 2008 which obligated Reynolds to supply Inline with OPS and PET until January 2009. (Defendant's Response at ¶ 9).

Plaintiff filed a complaint in this court on October 15, 2008.  (Doc. 1).  The complaint raises a claim for breach of contract.  The plaintiff alleges that defendant breached the 2003 supply agreement by failing to pay amounts due under that agreement and failing to pay invoices issued by Reynolds under the 2006 contract. (Id. at ¶ 19).  Count II of the complaint alleges unjust enrichment for Inline's taking

2

delivery of Reynolds's product and not paying for it.  Count III raises a claim for

promissory estoppel, alleging that Inline should have known its promise to pay for

product supplied by Reynolds induced Reynolds to supply that product and that

Reynolds should therefore be paid for the product.  The case was assigned to

Magistrate Judge Thomas M. Blewitt for pre-trial proceedings.  Inline filed a

counterclaim along with its answer.  The counterclaim alleged that Reynolds had

breached a contract with defendant to supply Inline with plastic products after

October 10, 2008.

    After the parties completed discovery, plaintiff filed a motion for summary

judgment, seeking judgment on both its claims and on the defendant's counterclaim.

(Doc. 28).  After the parties initially briefed the issues the case was transferred to

Magistrate Judge Martin C. Carlson.  (See Doc. 44).  Magistrate Judge Carlson

allowed additional briefing and then heard argument on the plaintiff's motion.  On

February 1, 2010, Magistrate Judge Carlson issued his report and recommendation.

(Doc. 61).  He concluded that the parol evidence rule barred consideration of any

document or evidence outside of the 2006 contract between the parties, and found

that summary judgment was appropriate for the plaintiff on its breach of contract

claim.  The magistrate judge found, however, that summary judgment was

inappropriate on the defendant's counterclaim.  Evidence existed, the magistrate

judge found, by which a jury could conclude that a contract existed between the

parties after October 2008.

3

The parties filed objections to the report and recommendation.  In a memorandum and order issued on March 17, 2010, the court overruled the parties' objections and adopted the report and recommendation.  (See Doc. 65).  After the parties engaged in mediation in an attempt to settle the case, the court scheduled a pre-trial conference and set a date for trial.  (See Docs. 83, 86).  On March 10, 2011, defendant filed the instant motion.  Plaintiff filed a brief in opposition, bringing the case to its present posture.

**Jurisdiction**

The plaintiff is a Delaware corporation with its principal place of business in Virginia.  Defendant is a Connecticut corporation with its principal place of business in that state.  The amount in controversy exceeds $75,000.  The court therefore has jurisdiction pursuant to 42 U.S.C. § 1441.  Because the court is sitting in diversity, the substantive law of Pennsylvania applies.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Discussion**

Defendant seeks to have funds related to the instant contract dispute placed in escrow pending the outcome of the trial.  Defendant represents that at the time the plaintiff filed the case the parties disagreed about whether the supply agreement mandated quarterly or immediate payment from defendant.  (Motion to Permit Placement in Escrow (Doc. 87) at ¶¶ 3-4).  Defendant insisted that payment could be made quarterly.  (Id. at ¶ 4).  When, from defendant's perspective, a quarterly

4

payment came due during the pendency of the litigation, defendant asked plaintiff's counsel for permission to put that payment in escrow.  (Id. at ¶ 6).  When plaintiff's counsel did not respond, defendant petitioned the court for an order allowing the payment to be put in escrow.  (Id. at ¶¶ 6-7).  The court denied this motion.  (Id. at ¶ 8).

Defendant has submitted all of the quarterly payments that came due during the course of the litigation.  (Id. at ¶ 9).  According to defendant, those nine payments have totaled $2,450,225.23.  (Id. at ¶ 10).  Defendant insists that the amount due plaintiff at the start of the litigation totaled $2,792,860.02.  (Id. at ¶ 11).  From January through March 2009, plaintiff issued defendant four credit memos to defendant totaling $35,471.98.  (Id. at ¶ 12).  As such, defendant claims, the total amount owed plaintiff is $307,162.81.  (Id.).  Defendant's next quarterly payment is due April 8, 2011.  (Id. at ¶ 13).  That payment, defendant contends, would extinguish all of the remaining $307,162.81 owed plaintiff.  (Id. at ¶ 14).  At the same time, defendant contends that it suffered $365,472.00 in damages from plaintiff's alleged breach of contract.  (Id. at ¶ 15).  Because the amount defendant claims in damages is more than the amount defendant owes plaintiff, defendant requests that the court order the final quarterly payment held in escrow pending the outcome of the litigation.

Plaintiff responds by pointing out that defendant admits to owing plaintiff more than $307,000, and that summary judgment has been awarded plaintiff on this claim.

As such, there is no dispute as to the funds owed by defendant to plaintiff and no reason to hold that amount in escrow.  There is a dispute, however, about whether defendant is owed any damages by plaintiff, and the amount of such damages due. Holding the funds in escrow, then, would mean that funds which are indisputably the property of plaintiff would be withheld from plaintiff to secure funds which might never be due defendant.  Such an outcome is contrary to the federal rules, defendant insists, and would upset the law of the case as established by Judge Blewitt's earlier decision.

On April 7, 2009, Magistrate Judge Blewitt denied defendant's motion to place the payment in escrow.  (See Doc. 23).  Judge Blewitt found that "the only dispute in this case is whether [plaintiff] is due the entire amount of the debt Defendant owes it or whether it is only entitled to quarterly payments." (Id. at 4).  Judge Blewitt also pointed out that "while Defendant argues that it is entitled to set off the amount of damages to which it may be entitled if it wins on its counter-claim against Plaintiff, i.e. Plaintiff caused Defendant damages when Plaintiff abruptly discontinued shipments of products and no longer accepted Defendant's orders, the Defendant's claimed set-off is disputed, unlike the amount of the quarterly payment which Defendant owes to Plaintiff . . . which is undisputed." (Id. at 5).  The court thus rejected the motion to place the quarterly payment in escrow.

The court finds that the facts have not changed since Judge Blewitt rendered his earlier decision on placing funds in escrow.  There is still no dispute that

defendant owes plaintiff the funds that are the source of the quarterly payment. There is still a dispute about whether, and how much, plaintiff owes defendant in damages for the alleged breach of contract.  The pending trial could lead to a verdict for the plaintiff, or damages for the defendant smaller than the amount alleged here. Were that outcome to ensue, plaintiff would have been deprived use of funds everyone agrees belongs to plaintiff.  Moreover, defendant does not allege that plaintiff would be unable to satisfy a judgment.  There is thus no reason to set aside a sum that may never be paid from funds admittedly owed the plaintiff by the defendant.  The court will therefore deny the defendant's motion.

**Conclusion**

For the reasons stated above, the court will deny the defendant's motion to place the disputed payment in escrow.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **REYNOLDS PACKAGING KAMA,** | : | **No. 3:08cv1902** |
| **INC., f/k/a ALCOA KAMA, INC.,** | : | |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **INLINE PLASTICS CORPORATION,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

**AND NOW**, to wit, this 28th day of March 2011, the defendant's motion to permit

defendant to place disputed payment in escrow (Doc. 87) is hereby **DENIED**.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

8